Good afternoon, your honors. My name is Carl Gunn. I'm representing Ms. Olivas. As I think has been indicated, people are splitting their time. I'm going to take ten minutes of our twenty minutes and try to reserve two minutes of my ten for rebuttal, if I may. You're both representing different clients. I understand it in this case. Correct, your honor. The first thing I'd like to emphasize, your honors, is a couple of facts in this case that make it, made it far from an overwhelming government case of trial. First, there's a strong non-criminal reason for Ms. Olivas' contact with Mr. Galvedon. He's her younger brother, and people sometimes love their younger brothers, even when they're engaged in criminal activity. Second, the supposedly laundered funds here, we're talking about amounts like fifty, a hundred, two hundred dollars, that total a little more than a thousand dollars over ten years. Not money that cries out as drug trafficking, and so on. But you're not making a sufficiency of the evidence argument. That's correct, your honor, but what I want the court to understand, maybe I'm putting the cart before the horse, but I guess I want the court to understand. You want to say that there's a, some of these minor, what could be construed as minor errors could have actually had an impact. Yes. What I want your honors to know is there's a cart behind the horse. Okay. Can I actually just ask, maybe this will help frame it up. We've issued a published opinion in the Holguin case, and obviously that addresses three of the arguments here. I haven't actually looked to see how that shakes up for your client specifically. And then, you know, a memorandum disposition that sort of says three other arguments are disposed of. I would be interested, well, I'm not, I want to hear from you why those don't control in this case. What's different about this case? I don't think. They may go all to this, the other defendant? I think so, your honor. But let me, let me just, the other case did involve the same Mexican mafia expert, former member, Rene Enriquez testifying. However, I don't believe, there was no issue of dual role testimony there, and he certainly wasn't testifying. Well, there's an opinion that talks about the differences between lay testimony and expert testimony. But they don't talk, they don't, they don't talk about problems with his dual role. They talk about his issue, other issues about him. They talk about, you know, whether his opinions were sufficiently supported, whether there were sufficient showings of reliability, things like that. So let's assume that's all true. Let's assume that, that it was sufficiently supported and there was sufficient reliability. What makes it reversible error in this case? What makes it reversible error in this case, your honor, is he combined lay testimony with expert testimony. And I don't think he did that in Holguin. It certainly wasn't an argument about it that was made in that case by the defendants. The argument I'm presenting. Was there an objection to mixing lay and expert testimony? Yes, there was. And more important here. Was there? See, as I read the record, what happened was, as I read the record, what happened was that the judge and the U.S. attorney said, here's how we'd like to proceed. I'd like to say to him, I'd like to say to the witness, here's what, this is now, now going to be lay testimony. This is now going to be expert testimony. And I don't think anybody objected to that procedure. Now I look at the record and I'm trying to find out where, when somebody is, when someone, when he's testifying and it's under lay, did anybody on your side ever stop, step up and say, your honor, object, that's expert testimony? There's two answers to that, your honor. The first answer is yes. And the second answer is a bit of a cop-out. I think that's the issue that my co-counsel has briefed. Okay, I understand. Your co-counsel may have briefed it, but, but I, I think you can tell me, did, did, did somebody representing your client ever step up during the testimony of the, of the expert and say, object, this is testimony that they've designated as lay and it's really expert testimony? My client's counsel joined, simply joined in the motions of the other counsel. Okay. So, so, so, you'll, you'll rely on her recollection of the record. I will, your honor, if I may. Partly, because I want to focus on. That's fair, because I think it's an important point, though. The question is whether it's evidentiary error. And, and, in the absence of an objection, since I, I, your, your, your basic point is one I'm sympathetic with, which is it's often difficult to tell the difference between expert and lay testimony. But that's why it's hard to find plain error if nobody points out to the judge that somebody's offering to expert when they should be offering lay testimony. And if I can, I will rely on my co-counsel's test, argument on that issue. If I could, I'd like to focus on two issues that go really strongly to prejudicing Ms. Olivas. One is letting Rene Enriquez testify in a dual role at all. That was a major problem in this case. First of all, the court has to recall that all this court's cases have said is that such testimony isn't, quote, categorically, unquote, prohibited. That suggests it is prohibited in some cases. And what's that, and how do we review the district judge's determination on whether to let it in? It's an abuse of discretion standard of review, and I've argued in my brief that there was a sufficient objection there. I understand why you've argued, but tell me why, why the judge, your argument seems to be that Enriquez had it in for...  So why was it an abuse of discretion? Because what you have, your honor, is you have a witness who not only was a, quote, expert, unquote, but was also intimately involved, had, I use the word intimate, the government nitpicks about that, but he had this tight relationship with my client. They were Carnells together in this secretive organization with only 125 members, almost like a little group of masons in prison. But doesn't he have to be involved in order to be a lay witness? Right, maybe, but he's brought into the organization at the same time as my client, their brothers. The problem here, your honor, and I don't know that it would exist in every case, but the problem here when he got brought in at the same time as David Galvedon and he was able to touch pinkies with him about murdering his sister-in-law, and that was okay. Every time the jury hears him testify as a supposed expert, they're going to be saying to themselves, well, yeah, not only that, but like, they were really tight in prison. He knew this guy really well. David Galvedon must have talked to him about all sorts of stuff, and so he's basing his opinions not just on his expertise, but also all this other stuff. It sounds like you're spinning up quite a bit of speculation that might be going through the jury's mind. I mean, it seems like a lot of that is going to be addressed in the jury instructions. I have to imagine the jury was told only, you know, base your decision based on the evidence that you hear. I mean, I don't think we can just presume that the jury's going to spin all this up like this. But the evidence they heard certainly allowed that inference. The evidence they heard was that these guys were in this secretive organization, that they were made as carnals or brothers together, that they were close enough that he could murder his sister-in-law and that was okay. I don't think it's a totally, if it's allowed, I think it's a totally reasonable inference. Nothing in the jury instructions is going to say they can't draw an inference from that sort of relationship. But the instructions on lay and expert testimony were unobjected to, as I read the record. Right, but there's nothing in those instructions that suggests to the jury that you can't... So what you're suggesting is that the judge abused his discretion. I assume he didn't abuse his discretion by allowing him to give lay testimony. I'm sorry, say that again, Your Honor. It was okay for him to give lay testimony, wasn't it? It was probably okay to give him... Okay, so you're suggesting he abused his discretion by allowing him to give some expert testimony because the government did at least attempt to say this is lay and this is expert. Well they said this is expert and then he testified lay for about 30 more pages. I know, but with no objection that he was testifying as... He could testify as lay without any qualification, correct? The problem here was the judge allowing him to do both at the same time. I think what you're suggesting in your brief is that the problem was allowing this person to testify because of his intimate relationship with the various parties in the case. And that has to be an objection to him being an expert, not a lay witness, right? Well, or he could have testified as an expert without talking about his relationship with David Galvedon. He could have done it. They could have done it that way. But you didn't object to his qualifications as an expert. So what we have is somebody who could have testified as an expert and could have testified as a lay witness and did both but without any objection as to various parts of the testimony. So I'm trying to figure out why this particular witness is one where the judge should have said, I don't care. Even if it's perfectly clear which side of the line each thing falls on, you shouldn't be able to take the stand. And the reason, Your Honor, is any time the jury is hearing him testify as a so-called expert, they're going to be thinking his expert testimony is not just based on his expertise but also based on his close relationship and the knowledge that would have given him about David Galvedon. And you've identified a real problem with the dual role stuff. I don't mean to belittle it. I think in every case where somebody testifies both ways, there is this danger that the lay testimony gets over-treated because the person's an expert and the expert testimony may be – so I'm trying to figure out what's so different about this one. The typical case you're having about a law enforcement officer and the law enforcement officer's lay knowledge is just having been involved in the investigation from a sort of distant objective perspective. Here it's almost like having someone's wife or brother testify about them but also testify as an expert. I mean, the jury's going to be sitting there saying it's not just his expertise but he knows this guy really well and there's stuff that must be in his opinion based on that. I guess this is an almost unique case. You don't see very many cases like this, Your Honor. The typical dual role case is the law enforcement officer who knows because of his involvement in investigation and it's not like this intimate, close relationship. This is – it's almost like having someone's sibling or spouse or something like that come in and be an expert and what juror's going to be able to separate that out from the natural assumptions they make about the person's opinion also being based on how well they know the other person or what that other person has told them in private or secret. I see I've used my time up almost. Well, you said you had a couple more. Maybe we can go through them very, very briefly. All right. This next issue I wanted to talk about is this testimony on the ultimate conclusion or what is implicitly the ultimate conclusion. She is, in quotes, a secretary and a secretary, quote, knows everything, unquote. Well, I was trying to parse that out in your brief. The testimony is never that what's in her mind. The testimony is what the role of a secretary is, correct? Well, and what's in the secretary's mind because the – What the role of a secretary is. Not just that. Not this secretary, but so I can say the role of a judicial assistant is to know everything that goes on in the office without saying that my judicial assistant actually does. Well, but he said a secretary does, not that the role of a secretary, but the secretary does, quote, know everything, unquote. And then he said she, quote, is, unquote, a secretary. And that goes much further, Your Honor, than the cases the government cites that talk sort of amorphously about someone being involved without talking about their knowledge or intent. Or talked about aiding and abetting, but then the cross-examination made clear that he meant aiding and abetting in the real lay sense, not in the criminal intent sense. So I think this case does, Your Honor, go much further. And you said you had a third. Well, the third, Your Honor, I guess – well, there was a third and a fourth, but I'll skip – Yeah, we're going to cut you off at a third at this point. Let me talk about a third because I think my co-counsel may sort of touch on the other. The knowingly instruction that was given, the Stein case, which is precedent in this court that the government tries to distinguish. I just want to make my points again. I talked about this in the reply brief, that there's three reasons the government is wrong. All three distinctions the government offers are wrong. First of all – Well, let's assume it's error. Okay. Let's assume it's error for a moment. Okay. I'm trying to figure out how it could have affected the outcome in this case, given the jury's finding that your client knowingly engaged – in other words, sometimes the difference between intentionally and knowingly could be very important. But if I – if the jury found that I knowingly sent in money to a prison to be used in nefarious activities or took money to be used in nefarious activities, is it possible that they wouldn't find that I didn't do it intentionally also? Well, there's no knowingly – there's nothing about the money in prison going to nefarious activities. That's just David Galvedon's going to live off – No, no. The jury actually makes a finding on part of this, does it not? No, not that David Galvedon was going to do anything nefarious. No, not David Galvedon, but your client. Doesn't the jury find – I'm trying to find the exact thing. It says – no, but they're not asked to make both findings that our case law requires, correct? I'm sorry. Say that again, Your Honor. The problem with the instruction is they're not asked to make both findings that our case law requires. Well, the instruction basically contradicts the finding they're supposed – it contradicts the finding that she has to know the money comes from illicit activities. Right, but she – but they are instructed that they have to find something with respect to her activities, are they not? They don't have to find that she knows – they're told they don't – the instruction implies that they don't have to find that she knew there was anything criminal about the money. The instruction required only knowledge instead of a specific intent, correct? No, it didn't even require – the problem is because of – it did not require the knowledge that the money came from an unlawful source if the knowingly instruction overrides the money laundering instruction. The jury was instructed that it had to find that the defendant became a member of the conspiracy knowing of its object and intending to help or further facilitate the scheme, correct? But then the money laundering conspiracy is defined in a way because of the contradictory instruction that doesn't require the element of knowing the proceeds were criminal. That's not the instruction that you're focusing on in your brief. In your brief, you're focusing on the RICO instruction, and you're saying the failure to include both halves as we require – Holguin says we require it – is not enough. No, Your Honor, I'm actually focusing on the money laundering instruction. The money laundering instruction has a requirement that you know that the proceeds come from illegal activity. That's contradicted by the knowingly instruction. Now, that gets rid – conceitedly, it only gets rid of two of the counts. It gets rid of the money laundering conspiracy, and then because the RICO conspiracy could be based on the money laundering conspiracy, we don't know, it gets rid of that. But I'm asking a different question. Is it really – could a reasonable jury find that your client became a member of the conspiracy knowing of its object and intending to help further facilitate the scheme, but didn't do so knowingly or willfully? She could – a reasonable jury could – Tell me how that works. I just – on these facts, I just don't understand. A reasonable jury could have found her guilty without finding that she knew the money she sent to David Galvedon, the $200 that added up to a little more than $1,000, that she didn't know that money was from criminal activity. Well, but it did have to find that she knew – she became a member of the conspiracy knowing of its object and intending to help further facilitate the scheme. So what you're saying is that might have sufficed on the drug side, but not on the money laundering side, because for all she knew, she was sending them clean money. Right. Okay. Okay. And then that infects the RICO. I got you.  Thank you, Your Honor. Hear from both counsel. Good afternoon, Your Honors. May I please the court? Christy Hughes on behalf of Mr. Salinas. So – Can you help me at the beginning with the objection issue? Pardon, Your Honor? Can you help me with the beginning – at the beginning with the objection issue? Yes. I'm trying to figure out, looking at this record – Yes. When a witness is asked a question and offering an answer, whether somebody pops up ever and says, no, that's expert, that's not lay, or that's lay, that's not expert. Your Honor's – I'm having trouble locating it. Your Honor's correct. So both defendants objected in limine to the dual role issue. The only time there was an objection at trial to an expert offering – expert opinion testimony – so when Agent Paris testified about the drug language, Mr. Salinas' counsel objected and said, he's offering lay opinion testimony, and I think he's actually testifying as an expert on this. This should be qualified as expert testimony. And the judge said, no, I think this is actually lay opinion testimony. That was the only sort of dual role issue. That's the only actual contemporaneous objection. Correct. But I don't think that's fatal to our argument. Because in Vera and in Torralba – I'm going to mess up this site – but in Torralba, Medea, the court still found plain error, even though there was a lack of objection at trial. And the court said, even when the defendant fails to object, it is the district court's obligation to correctly instruct the jury on how to evaluate dual role opinion testimony. That's why I'm coming back to this. You don't object to the instruction that was given. You object to the fact that one wasn't given. Right. During the testimony. But you don't object to the eventual instruction that was given about the difference between lay and expert testimony. Well, that's correct. But we've argued that the lack of any objection is the same. No, I understand. So your real contention is the lack of a mid-trial instruction is what causes the problem. Correct. But we've never required that solely. And here the government gave the headlines and said, okay, now we're testifying to – now he's providing expert testimony, now he's providing lay testimony. And that seems to be distinguishing these other two cases that you're relying on. I'm sorry. Can Your Honor repeat the beginning part of that? Well, I thought here, if I'm not mistaken, the government, when it was presenting the testimony, indicated to the jury when each witness was testifying as a lay witness and when they were testifying as an expert witness. That did not happen in the other two cases. And we've never said that you – that the district court is the sole way to remedy this by providing, as you're requesting, a mid-testimony instruction. Well, I disagree. I think this court has said that the district court – Where have we said that? Well, in Toralba, Mendea, the court said that the court – But we clearly didn't say that because that wasn't – this issue wasn't even raised in that case. The government there was not giving these headlines about where the testimony was – what type of testimony was being presented. That's true. But there, actually, the district court offered to give an instruction, and the defendant said, no, I don't want that instruction given, but didn't propose his own instruction. So there was no instruction given. And the court actually said, well, there's some amount of invited error here, but we're still going to find plain error because the district court didn't properly instruct the jury on how to evaluate dual-role testimony. But in that case, wasn't there also an objection to the eventual instruction given? Or there wasn't – or there wasn't one given that – There wasn't – There wasn't one given. Correct. And the defendant said, I don't want your instruction. Right. Here's my problem. Let's assume you didn't ask for an instruction in this case, right? Correct. Okay. Let's assume that you didn't ask for one. And you got to the end of the trial, and you said, Your Honor, we made a terrible mistake. We never asked for a mid-trial instruction. And the judge said, yeah, had you asked for one, I might have given it, but let me give them an instruction now. Let me make clear what expert in lay is. Isn't that essentially what happened here? Well, sort of, but with the caveat that in Lemonade, the government made clear that we at the time of testimony. That's what everybody thought was going to happen. Government didn't object. Government didn't object. But you didn't object. And you didn't object to the absence of one. But I think everyone thought that was going to happen. But it didn't. It didn't. So is it uncorrectable – let's assume for a moment that it's error, even though we don't have any case that says it's error not to give the mid-trial instruction. I'm trying to figure out why that error is not corrected by the judge at the end giving what I think nobody thinks is an incorrect instruction about the difference between an expert. It's just insufficient. The jury's already heard the testimony. So your position is that – I want you to put aside for a moment whether some of the testimony crept over from one side to another. So your argument that not giving this instruction, whether or not it's requested, is structural error? That's a hard argument for you to make, I think. I don't know that it's structural. But it doesn't help the jury to evaluate the testimony that they're about to give. It probably doesn't. It probably would be better to give it. But don't you still have to demonstrate that some of the testimony that was purportedly lay testimony was really expert testimony? I think we have to demonstrate that there was a risk that the jury gave this testimony undue deference. That's the problem. There's always going to be a risk when there's lay and expert testimony. So you really are making a structural argument. You're saying there's such great danger when somebody testifies in the dual role that we must reverse when a judge doesn't give that instruction mid-trial. I think that's what you're saying. I'm having trouble with it, but I want to make sure that's what you're saying. I think – I don't know that it's that big of a stretch for us. This Court has repeatedly said that there is that risk from dual role testimony. And Your Honor has asked my co-counsel, what's the difference between this case and Holguin? So Holguin was a case where they did raise this dual role issue, and the Court looked at it on plain error and said, we're not going to find plain error because there were sufficient safeguards. None of those safeguards were in our case. Well, there is a safeguard in your case. There's a safeguard that the government says, we identify this as lay. No objection when the testimony comes in from your side. No saying, wait a minute, that's not a lay. That's an expert. And we identify this as expert. And again, no objection from your side. So there are safeguards. The only safeguard that's missing is the mid-trial instruction. Well, that's not the only one. There were more in Holguin. There was the judge instructing at the beginning of Rodriguez's testimony, and then at the beginning of each phase, the judge reaffirmed, remember I gave you that instruction about how to evaluate each of these types of roles, and then the panel in Holguin said the prosecutor was scrupulous about, at the beginning of each question, explaining to the jury, or phrasing each jury the basis for that testimony. So based on your experience or based on your investigation so the jury could evaluate, this is what he's testifying on. So that it was clear to the jury the basis for this dual role testimony. We didn't have that in our case. We didn't have those safeguards. The testimony was intermingled. There was no instruction at the time that this testimony came in. So the jury is going to think that all of Enriquez's and Perez's testimony was expert testimony. But see, what you're saying, and I take your point about the dangers of dual role testimony. I wish our cases didn't allow it, but we do. But what you're really saying is, I don't have to say anything at the time. I don't have to ask for this instruction. I don't have to make an objection. I can just wait later and see how the case turns out, and then come back and complain about the absence of things that I ever asked for. Absolutely not. I'm saying we are on plain error. That's what plain error means. That's what plain error means. I'm saying this court has found plain error before, and it should find plain error here. This case is exactly the same as the cases where we found plain error before? I think it's similar. I think the no instruction, no contemporaneous instruction is the same as no instruction. I keep trying to get you to point to me to something because this is important to me. I think we found plain error in the prior cases because we said some of the testimony was plainly expert testimony, and the jury wouldn't have known it was expert testimony. And so tell me what testimony in this case falls on the wrong side of the line to make the error plain? Well, okay, and I want to try and get to the rule 702 stuff because I think that was so problematic, too. So let me try and do this really quickly. Unless you just want to rely on the structural argument, but it seems to me it'd be more convincing to me if you could say, and look what he said, and this was so clearly expert testimony, and it was in the portion that the government identified as lay, or something like that. Right. So at 3 Alibis ER 367, Rodriguez is talking about, he's in his expert testimony phase, and he's talking about his training and experience. And he's talking about how drugs are typically obtained for contrarianist members. He switches over to his involvement in the investigation. This is when he's intermingling. He's saying, no, they actually front drugs. And he goes back and he says, well, no, they use the telephone. He's going through, he's talking about how Michael Salinas is bringing these drugs into the prison. This is used. Oh, I'm seeing my time is running out. We will, we'll give you time. These are the phone calls that the government is bringing up at the end, and they're closing to explain, this is evidence of Michael Salinas drug trafficking for the organization. These are evidence of him agreeing to the racketeering acts, participating in the racketeering acts. This is expert testimony of him intermingling his expert testimony and his lay opinion testimony, all in this dual role testimony that the government has now presented to the jury wholesale as expert testimony. And he's going back and forth. The jury is going to receive this wholesale and give all of it undue deference and think, oh, well, we're just going to take all of this as expert testimony. He's translating these calls for us and not understand the difference between it. What the court said in Vera is maybe some of these would be harmless on their own, but he's just allowed to interpret these, repeat the government's argument for it over and over and over again. The jury isn't going to listen to these calls on its own and make their own opinions. They're just going to take all of his testimony as expert testimony, not form their own opinions about it, and just sort of listen to everything he's saying, give it the expert. Do you want to take a minute on the 702? Yes, because Your Honor's asked about the difference with Holguin. So the court and Holguin went through Enriquez's method for translating unfamiliar expressions. There's a letter in Holguin where he goes through and he picks out sort of words that he can translate. He says, Palm Springs refers to Palm Hall. I know that because I was in Chino State Prison. He goes through and he kind of, it's almost like when I work with a client and I speak Spanish, I can tell that the interpreter is kind of getting the gist of the conversation because I can pick out words that the interpreter is saying. That's kind of what Enriquez did here in the Holguin opinion as you go through. He translates bits and phrases of it. So what's different here? Here, nothing. He is just translating wholesale. Paris, Enriquez, and Rodriguez are translating wholesale these calls. No method is given. So if Your Honors go through, and I'll try to be really quick. We have to jump back and forth between excerpts, unfortunately. So if you look at Enriquez, Salinas ER 75, this is call number 46.2A, and it starts at 6 Olivas ER 1048. This is where he's talking about paying a third. He says, me personally, I don't got to pay a third. I don't got to pay a third because that belongs to him. And the government asks, what is Mr. Salinas conveying here? And he answers that he's not subject to the third tax because he's dealing directly for the Mexican mafia member. But out of respect for the MESA or the Mexican mafia member that controls the yard, which is two different things, he's going to provide them with a gratuity out of respect. Then he goes down farther, and the government asks, is he on a MESA here? Can you tell? No, he's not on the MESA. He's dealing directly for a Mexican mafia member. It's my belief in this limited excerpt. That's what I would assume. And they ask, so he's saying he doesn't have to pay a third because he's operating under David Gavaldon? Yes. He's going to pay some of the money anyway out of respect. Yes, he's going to pay the Mexican mafia member who controls that yard. You said this is a 702 issue. Correct. So tell me, I'm trying to figure out how this gets raised in the trial court. So there was no reliability finding made. There was no reliability finding made. So the question, even though one should have been made, the question is whether or not it was. So the government's argued that- Whether the record shows enough reliability. And your argument is that it doesn't because- He's given no methodology that he's employed to translate any of these calls. And the government has argued, oh, well, the panel in Holguin found Enriquez to be reliable, and you should sort of make the same finding here. And you say the difference is that his answers in that case made him reliable, but his answers in this case do not. Right. He's no method. He's just sort of translating back and forth. Okay. Again, we'll give you a minute for rebuttal. Thank you, Your Honor. Thank you. And now we'll hear from the panel. May it please the court. Jehan Pernas on behalf of the United States. Your Honors, I'd like to start with the explicit reliability finding that counsel just ended with. In Holguin, the court distinguished between experts testifying on familiar expressions and expert testifying on unfamiliar expressions. And in Holguin, the court held that when an expert testifies on familiar expressions, you don't need an articulation of methodology. You need an articulation of methodology when an expert is testifying on unfamiliar expressions. And so how do we know these are all familiar? Because that came up in the testimony. Yeah. Precisely, Your Honor. Thirds came up in the testimony. Wait, were these... There's so many different arguments. Was objection made on this one, or are we reviewing this one for plain error? I mean, you're probably the wrong person to ask. Your Honor, I don't... Most of this testimony was not objected to. I believe, actually, Defendant Salinas didn't make any objections to Enriquez's testimony. And Defendant Olivas only made 15 total in Enriquez's entire testimony, and none of them were on lay or expert grounds or lack of foundation grounds. But that is just off the top of my head. So to the extent that this witness testified as an expert, you do agree that the court should have made a reliability determination? We believe, Your Honor, our argument is that the... But didn't we say so in Holkwood? Didn't we say a reliability determination is required? It won't always be reversible error. I'm not asking you what was reversible error. You agree the court should have made a reliability determination? Your Honor, in this case, we do believe the court made an adequate reliability finding on the grounds that the defendant's motions raised. So the defendant filed... Defendant Salinas filed two motions in this case, a motion on coded language and a motion on gang expert testimony. The motion on gang expert testimony, which requested the Daubert hearing, did not address coded language. And in that motion in limine, the defendant specifically said that coded language was going to be addressed in a separate mill. The coded language mill was focused primarily on the defendant's disclosures and whether... Sorry, on the government's disclosures and whether the government made adequate disclosures in this case. So... So is the coded language testimony expert testimony or lay testimony? It is expert testimony. Okay, and before a judge allows expert... They may not have objected, at least what you're saying in this way, but shouldn't a judge, before he lets expert testimony in, make a reliability finding? I believe that... You think that they waived any claim of reliability? I think defendants need to request an explicit reliability finding on the coded language in order for the judge to address the issue. That doesn't seem to be how we've handled it. We've said, no, you've got to make... I mean, even in Holguin, we've said, you need to make a reliability finding. It doesn't seem to be based on the objections that are made. That's like a requirement to get the evidence before the jury. I think it's based on the motions raised by defendants. Well, no, you seek to qualify someone as an expert and want an instruction to the jury that their opinions are to be given a certain way because they're an expert. In order to qualify someone as an expert, I read Rule 702 to put the burden on the proponent to establish that his methodology... Establish the reliability of his methodology. I don't see where you did that here. Now, it may not make a difference for the reasons Holguin says, but I don't think they have to ask for a reliability finding. You're the one who's seeking to qualify this person as an expert. We are, Your Honor. We did make a number of disclosures in this case. They didn't stipulate to reliability. No, they did not, Your Honor. We did make a number of disclosures. The first superseding indictment had summaries of a lot of the coded calls that were introduced at trial. We provided transcripts of all these experts' past testimony on the Contreras, on the Mexican Mafia, in cases arising... Well, and so... Then you're just saying that there was enough evidence of reliability, but that doesn't mean that the district court actually made the finding. Yes, Your Honor. I'm saying that with respect to the gang expert testimony mill that Defendant Salinas raised, that the district court made adequate reliability findings. Where? In its order. Where does it say, I find this to be reliable? It said the district court's order addressed the standard for reliability for gang expert testimony, cited to Hankey, addressed all of the arguments raised by Defendant Salinas, and said that the government's experts will need to explain the hierarchy of the Mexican Mafia and its relationship to other street gangs, the collection of taxes, and the role of... You seem to be making an argument that the district court can implicitly make a reliability finding. I'm not sure we've ever said that. I mean, am I right to... I mean, because you would agree there's no explicit finding that you normally find where you say, look, here's all the bases for reliability. You're just saying when you read it, you realize that they're reliable because of what the district court points to. Yes, Your Honor, in part. That is what I'm arguing. Have we ever said that you can do that implicitly? And more specifically, how is that different than Holguin? Well, in Holguin, the court under an abusive discretion standard, even though... And you're saying here it would be plain error. Yes, Your Honor. Even though in Holguin, under an abusive discretion standard, the court held that there was an absence of explicit reliability findings. So in Holguin, was there an explicit objection to the absence of a reliability finding? Defendants explicitly challenged reliability in Holguin. And you're saying if you don't explicitly challenge reliability, if you only challenge the expert's testimony, as they did... Or disclosures. Or whatever. But they said, don't let this guy testify as an expert. You're saying you got to say more. You got to say that don't let him testify as an expert because his methods are not reliable. And that's not the way I read our cases. I think our cases say, as a consequence of allowing somebody to testify as Rule 702 expert, a judge must make the sort of findings that Daubert requires. Understood, Your Honor. While the government doesn't concede error on this point, we do believe that the easiest path to affirmance here is that the defendants have an established prejudice, precisely because Holguin is dispositive. Holguin, analyzing the same experts, looking at the same experts, found that they had sufficient experience to testify in this case, an explicit roulette. Yeah, and so while Holguin might not answer the question of whether some of the stuff they said was lay or expert testimony, you think it does answer the question of whether their methodology was reliable? The methodology point is separate, Your Honor, with respect to just the explicit reliability point. Isn't it the reliability of their methodology that we worry about? Not their reliability as human beings, but their reliability of the way they arrived at their opinions. Yes. And to do that, let's turn to the example that defense counsel raised about Third's testimony. And the counsel attempted to distinguish the testimony given in this case as opposed to the testimony in Holguin. The vast majority, if not all of the testimony in this case, concerned testimony on familiar expressions. It was not unfamiliar expressions. It goes to the point raised by this court in Hermannach, where the expert said that Nina, Gucci watches, cookies, and microwaves under the sink all meant cocaine, without explaining his methodology. But in this case, in particular the Third's testimony, the call specifically discussed Third's working on a yard and paying money to the big brother on the yard. All of that is familiar based on Enriquez's expertise. He'd extensively discussed the way the Third's tax worked. He said that he helped set up the Mexican mafia tax system, that the Mexican mafia employed a flat tax of a third that they would impose on all gang members who were beholden to Mexican mafia members. The cooperator in this case, John Dominguez, testified that when he was working on the prison yard, he also paid a third to the Mexican mafia member that ran that yard. This is not unfamiliar or unique. In fact, Enriquez's testimony in Holguin on the ranch letter, that was clearly unfamiliar, an unfamiliar expression, and Enriquez was interpreting it. That is not the case in the Oliva-Salinas trial. So can you address the point that Ms. Salinas' counsel raised about Enriquez? That was the point that I was just addressing, Your Honor. Well, no, I mean, it's the point that his particular relationship in this case made him, made it quite difficult to separate his lay and expert roles. So defendant Oliva-Salinas' counsel raises the issue that Enriquez should not have been allowed to testify in a dual role capacity because his relationship with David, Enriquez's relationship with David Gavaldon was so close and so personal that it would almost be like having, permitting your wife or brother to testify in an expert capacity. Would you agree this wasn't addressed in Holguin? Yes, it was not addressed in Holguin. Counsel's raising a slightly different argument. There's simply no evidence in the record for this close relationship, Your Honor, none whatsoever besides defendant Oliva's speculation. All of the evidence in the record and defense counsel's argument at trial was that Enriquez was biased against the Gavaldon family. I think the exact quote was that he savagely ordered Cynthia Gavaldon murdered, and now he's back to antagonize, to torture, whatever term you want to use, the Gavaldon family. And he's still a master manipulator. He's going to say whatever he believes is going to help the government so he can get parole. That was the focus. There is no evidence in the record to suggest that Enriquez had any sort of special relationship with David Gavaldon or any special window into how Gavaldon thought. How about a special relationship with Salinas? Anything? There's none whatsoever. And I don't believe counsel. I don't either. I don't. So I'm trying to figure out when somebody might fall on the wrong side of the line. And what you're saying is that, at least in this case, there's no real evidence that his expert testimony must be lay testimony because of some closeness of relationship. Yes, none whatsoever, Your Honor. They were made Mexican Mafia members at the same time. That's it. And counsel mentioned that they touched pinkies and forgave each other over or David Gavaldon forgave Enriquez over the murder of Cynthia Gavaldon. But Enriquez testified that he was unsure of how David Gavaldon was going to react to that. And he thought, I think the exact quote that we cited in our answering brief is that he thought that they might, he might have beef with David Gavaldon and then they just sorted out by stabbing each other. Staying with Ms. Salinas for a second because it stayed fresh in my mind. We all agree, and government agrees, that the instruction unknowingly and intentionally should have been better. Yes? The defense counsel, there are a number of instructional arguments raised. I just want to be clear on one. Put aside the specific instruction about money laundering. I'm just thinking about the conspiracy instruction. The Rico conspiracy instruction. With respect to that, yes, Your Honor, it could have been better for us. Right. Okay. So now he says, maybe it could have been harmless error with respect to the drug conspiracy because it's hard to believe that anybody would intentionally know they're sending in money in order to further the conspiracy, but not know, but not intend to do so. But address, if we will, the money laundering part of it. What I think counsel says, and I may be mismaking his argument for him, he can tell me when he gets up, is that, how did she know it was dirty money that she was sending in? She may have known it was going to be used for drugs, but how would she know that she was laundering dirty money by sending it? Right. So I just wanted to clarify. So there were a number of instructional arguments made by both counsel. One of them had to do with Rico jury instructions, the new or contemplated formula. Right. That's what I was just talking about. That's what I hope you're focusing on. But I believe defense counsel... He has a separate objection to the fact that the two of them conflated each other. I'm not asking that question right now. It was to an entirely different instruction. Right. The knowingly instruction. And with respect to that, is that the argument that you want me to? Okay. With respect to that argument, defense counsel for defendant Oliva said that a reasonable jury could have found her guilty without finding that she knew the money was from criminal activity. That's right. I don't see how a reasonable jury could have found her guilty on the instructions given on the drug side because she had to know what the object of the conspiracy was. But because they were told they had to find that was an object of the conspiracy. So translate that to me to the money laundering side, if you would. Well, Your Honor, I don't think they could have found her... They had to have found her guilty using all the appropriate knowledge requirements for money laundering based on the money laundering instructions given. So with respect to the money laundering, to quote it specifically, with respect to money laundering at trial at 9 Oliva CR 186768, the government's second element states that the individual knew that the property represented the proceeds of some unlawful activity, which is the concern. So they had to find that to convict her of money laundering. Precisely. Therefore, when you got to the conspiracy side, having found that... No reasonable jury could have concluded she didn't have the requisite knowledge. And we clarified... Now I understand the argument. And we clarified that even further because we said that the phrase knew that the property represented the proceeds of some form of unlawful activity means that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form of activity that constitutes a felony. Okay, so now direct your attention to the money laundering instructions, which I hadn't focused on before, but counsel says he thinks they were not appropriate. Were they separately objected to? The money laundering instruction is what I just read out. Okay. The money laundering... Not the money laundering conspiracy. No, I know that's what you just read out. My question is, was that instruction inaccurate? Or was it... Well, first, was it objected to? No, it was not objected to. Okay. Was it inaccurate in any way? No, it was not inaccurate, especially given the opinion... The inaccuracy or the problem arises in the RICO instruction. But your argument is that's harmless error because the jury must have found all those things by convicting her of money laundering. I think the argument or defense counsel's is that the issue is that the knowingly instruction and the knowingly instruction is... An act is done knowingly if the defendant is aware of the act. No, I understand what the knowingly instruction wasn't objected to. No, it was not objected to. And the money laundering instruction wasn't objected to. It was also not, and neither was the... Neither was the RICO one, but there's a problem with the RICO one. So I'm trying to figure out, I'm trying to have you help me with this. If there's a problem with the RICO one, does it make any difference because all the other accurate and unobjected to instructions necessarily had the jury make the finding that would have cured the problem? I don't think the problem with the RICO one or the issue with the RICO one affects any of the other instructions. No, I'm not asking whether it does. I'm asking whether or not the jury's findings on money laundering would make any error with respect to the RICO instruction harmless because it's not possible for a reasonable jury to find that she did all the things that had to be found for money laundering, but didn't do all the things that had to be found for RICO. It's an argument you make in your brief. You're arguing it's harmless error because no reasonable jury having made these findings on money laundering could have failed to make the appropriate findings even if they'd been properly instructed on RICO. So tell me why that's the case. That's what I'm trying to ask. Well, no jury finding the defendant guilty of money laundering could have been confused on the RICO jury instructions because the new and contemplated formula used in the RICO jury instructions, first, it was used in Olguin and it didn't result in reversible error in Olguin. No, it was found to be harmless error in that case because the jury having found the predicate crimes on the facts of this case couldn't have reasonably reached a different conclusion. In other words, the drug conspiracy is a great... Now, if I know the object of the conspiracy is to send drugs into a prison, then no reasonable jury is going to find that I didn't know that was illegal. Right, yeah. So I'm trying to figure out whether there's a difference on the money laundering side. No, there isn't given the instructions given for money laundering, Your Honor, and specifically the instructions on the specific knowledge requirement for money laundering that the defendant had to have known that the funds were criminally derived. Okay. To address... I'd like to briefly address the dual role jury instruction demarcation issue that counsel also raised that there's no error there. The end of, as Your Honor noted, the jury instruction at the end of trial sufficed. The cases where this court has found error is in Taralba, Mendia, and Invera. And in both of those cases, no instruction was given at all. In this case, Defendant Salinas, the defendants actually waived their claim to this argument entirely. The defendants asked the trial court to separate the dual role testimony of the experts, and they noted the issues raised in Freeman and the safeguards raised in Ankrum. When the court asked the government what the demarcation procedure would be, the government laid out the demarcation procedure. At that point, the court turned to the defendants and asked, is that acceptable? And the court turned to the defendants and asked, is that acceptable, gentlemen? Counsel for Defendant Salinas said, it is to me. Counsel for Defendant Oliva said, yes, Your Honor. There was no objection when this procedure was followed at trial. There were no requests for cautionary instructions, and the dual role instruction at the end of trial was jointly proposed. So we would just hold that this, we argue that this claim was entirely waived. Thank you for your argument. We'll give each counsel one minute for rebuttal. Good luck with that minute. Use it wisely. Your Honor, the prosecutor said, there's no evidence in the record of this close relationship that I base my argument on. Dual role testimony on what you have here is essentially a group, like a criminal group, albeit, like the Masons or a fraternity. You have two men who were made at the same time in this organization. They pose for this, what I call class photo when they're made together at Folsom. They're in the same prisons together. They're in this group of 125, this secretive organization. There's tons of evidence of a close relationship in this case. The issue is whether that- Any closer than anyone else in the organization? I mean- Well, yes, in the sense that they were made at the same time and they're posing together and they're in the same prison together and that he was able, they made up when he killed the guy's sister-in-law. But maybe this might apply to anyone who testified about being part of the same organization with this person. That's what I was going to ask. Maybe. Is there a case that helps you on this? No, there's not a case that helps, but there's no case out there where dual role testimony by this sort of, quote, expert, unquote, was allowed. So it's a new case. I don't have a case. I can tell you where it was prohibited, but I don't have a case that says it was allowed either. And what Freeman says, of course, is not categorically prohibited. That suggests that it sometimes is prohibited. I may have- I think I already used my time up. But just one thought the prosecutor said, the same experts in Holguin. Yeah, but it wasn't the same defendants. It wasn't someone who was a sister who had a good explanation for seeing David Galvedon and dealing with these small amounts of money. You don't look just at it being the same experts. If you're talking about harmless error, you look at what the defenses were and the evidence was and that sort of thing. As I started off at the very beginning of my argument, Ms. Olivas had a very- what we trial lawyers call a triable case. This was a case where if there was error, it was harmful. Okay, thank you. And we'll hear one last rebuttal. Picking up on that same point. In Holguin, the court said the gatekeeping inquiry is case specific. And so you can't just look at the reliability finding or the harmless error finding in Holguin and say it applies here. You have to look at what happened in Holguin, what happened in this case, and look at was the testimony here reliable on the record? What did the experts say here on the record? Government counsel said this was all familiar testimony. No, I only got through one example with Enriquez, but there's more in our brief. The black girl Moesha testimony, that was not commonly used familiar expressions. There's others in our brief. Enriquez and Paris both testified that gang code is always specific to the crew and to the person. This is not familiar testimony that they encountered all the time. This was unfamiliar expressions that they encountered for the first time in this investigation. And so according to this court's case law, and as the court said in Holguin, that required an explanation of their method of interpretation. Thank you. Thank you. Thank you to all counsel for a very professional argument in obviously a complicated case. And the case is now submitted. Thank you.
judges: KLEINFELD, HURWITZ, NELSON